USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Trustees of the New York City District Council of Carpenters Pension Fund, *et al.*,

      Plaintiffs,

–v–

Manny P. Concrete Co., Inc,

      Defendant.

18-cv-4111 (AJN)

OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

  Plaintiffs, trustees of various employee trust and pension funds, bring this action to recover unpaid contributions, interest, and fees from Defendant, a construction company. The parties have cross moved for summary judgment. For the reasons that follow, Plaintiffs' motion is GRANTED and Defendant's motion is DENIED.

**I. BACKGROUND**

  **A. The Parties and Defendant's Contractual Obligations**

  Plaintiffs are the trustees of various multiemployer trust funds (*i.e.*, funds that are created for the benefit of collectively bargained employees working for many different employers). *See* Pl. Rule 56.1 Statement, Dkt. No. 57, ¶¶ 1, 2. The Funds are the "employee-benefit funds associated with [the] New York City District Council of Carpenters." *Id.* ¶ 2. Defendant Manny P. Concrete Company is "a construction company that performs concrete and foundation work in the New York City" area. *Id.* ¶ 3.

  This case involves a slew of interrelated contracts. Defendant performs some of its work under project labor agreements (PLAs), which are collective bargaining agreements (CBAs)

1

between labor organizations and employers that determine workers' wages and benefits.  *See id.* ¶ 4; Davidian Decl., Dkt No. 58, ¶¶ 7-14.  The PLAs "obligate Defendant to pay its employees with the collective bargaining agreements . . . of the unions that are signatories to the PLAs."  Pl. 56.1 ¶ 5.  As relevant here, Defendant "signed letters of assent" for five PLAs.  *Id.* ¶ 6.  Defendant's workers then "performed work on construction projects that were governed" by these PLAs, such as a construction project at Forest Hills High School.  *Id.* ¶ 7.

The PLAs "required Defendant to remit benefit contributions to the Funds."  *Id.* ¶ 8.[1]  In other words, the PLAs required Defendant to pay into the Funds on behalf of its employees, "for all hours worked on the type of work covered by the Relevant CBAs" at a specified hourly rate.  *See id.* ¶ 12.  For example, one of the PLAs states that the "[c]ontractors agree to pay promptly contributions on behalf of all employees covered by this Agreement to those jointly trusted employee benefit funds designated in Schedule A."  Davidian Decl. ¶ 20 (quoting the School Construction Authority PLA).  The PLAs also incorporated by reference the collective bargaining agreements of various unions.  For example, one of the PLAs states that it "together with the local Collective Bargaining Agreements appended hereto as Schedule A, represent the complete understanding of all signatories."  Davidian Decl. ¶ 19 (quoting the School Construction Authority PLA); *accord id.* ¶¶ 20, 21, 24–27, 30–33, 36–39, 42–47, 52.  These collective bargaining agreements, in turn, incorporated by reference the "Funds' trust agreements, regulations, and policies."  Pl. 56.1 ¶ 15.  In particular, the Funds "adopted policies

---

[1] Defendant denies this fact and some others contained in this paragraph in its Rule 56.1 response, Dkt. No. 67.  However, its denials are conclusory, not supported by any of its citations to the record, and indeed plainly contradicted by the record.  Defendant has therefore failed to raise a genuine dispute as to any of these facts.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

for the collection of delinquent contributions," which they refer to as the Collection Policy. *Id.* ¶ 17.

Funds like Plaintiffs monitor employers like Defendants to ensure that they are paying the required contributions. Defendant is thus required "to submit to an audit to ensure compliance with its obligations to the Funds." Pl. 56.1 ¶ 13; *see also id.* ¶¶ 16–18.[2] And the governing contracts create a regime of deadlines and escalating penalties if Defendant fails to comply. *See id.* ¶ 14. The Funds have also enacted policies, binding on Defendant, imposing penalties on employers that fail to pony up on time. *See, e.g.*, *id.* ¶ 20.

This litigation arose when the Funds audited Defendant's payments. *Id.* ¶ 20. "In 2017, the auditors reviewed Defendant's books and records for the period of March 26, 2014 through December 27, 2016." *Id.* ¶ 23. The auditor thus "determined how many hours each employee worked on the jobs for which Defendant was obligated to remit benefits." *Id.* ¶ 24. To determine whether Defendant had met its obligations, the auditor "compared the number of hours worked gleaned from Defendant's records with the number of benefit contributions that the Funds received on behalf of that individual." *Id.* ¶ 25. And if "the number of benefit contributions received by the Funds was less than what should have been paid based on the hours of Covered Work gleaned from Defendant's records, then the Auditor recorded the difference as a delinquency." *Id.* ¶ 26.

---

[2] As to this fact and many others contained in Plaintiffs' Rule 56.1 Statement, Defendant responds only by stating that it "Denies knowledge or information." *See, e.g.*, Def. Reply 56.1, Dkt. No. 67, ¶¶ 13. However, to contest a fact on summary judgment, it is well-established that a non-movant must provide evidence in the record supporting its denial. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment, therefore, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." (internal quotation marks and citations omitted)). The Court therefore deems any fact to which Defendant provided this conclusory response as admitted.

3

In November 2017, the auditor reported its findings: "Defendant did not pay 217 hours' worth of benefit fund contributions to Plaintiffs on behalf of Defendant's employees." *Id.* ¶ 29. The auditor then multiplied "the applicable benefit contribution rates set forth in the Relevant CBAs by the 217 hours' worth of Defendants' unpaid benefit contributions" to calculate "Defendant's outstanding obligation to the Funds." *Id.* ¶ 30. It determined that Defendant owed Plaintiffs about $20,000 for its delinquent contributions, interest, liquidated damages, and audit costs. *Id.* ¶ 31. Defendant does not dispute that "it owes 217 hours' worth of benefit contributions to the Funds." *Id.* ¶ 33, Def. Reply 56.1, Dkt. No. 67, ¶ 33.

After the audit but before this litigation began, Defendant issued a check for an amount equal to the principal of delinquent benefit contributions identified in the audit. *Id.* ¶ 33; Manny P. Tr., 23:21-24:5, 24:24-25:3; Davidian Decl. ¶¶ 95-98; Davidian Decl., Ex. T. However, Defendant did not pay what Plaintiffs claim is the owed interest, liquidated damages, or audit costs associated with its delinquency. *Id.*

### B. Procedural History

On May 8, 2018, Plaintiffs filed this case. *See* Dkt. No. 1. In their Amended Complaint, Plaintiffs alleged that Defendant's failure to make these payments violated the Labor Management Relations Act (LMRA). *See* Dkt. No. 41 ¶¶ 15-25. The parties have now cross-moved for summary judgment, and these motions are before the Court.

## II. LEGAL STANDARD

"Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015). Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the Court must view all facts in the light most favorable to the non-moving party. *See Eastman Kodak Co. v. Image Techn. Servs., Inc.*, 504 U.S. 451, 456 (1992); *Gemmink v. Jay Peak Inc.*, 807 F.3d. 46, 48 (2d Cir. 2015). In evaluating cross-motions for summary judgment, each motion must be examined "on its own merits," and "all reasonable inferences must be drawn against the party whose motion is under consideration." *Vugo, Inc. v. City of New York*, 931 F.3d 42, 48 (2d Cir. 2019).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." *Ridinger v. Dow Jones & Co. Inc.*, 651 F.3d 309, 317 (2d Cir. 2011). The same is true for "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Only disputes over material facts will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). "On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted).

### III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT

#### A. The LMRA Applies to This Suit

The LMRA creates federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees[.]" 29 U.S.C. § 185(a). And the statute defines "labor organization" as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." *Id.* § 142(3) (adopting the National Labor Relations Act's definition of "labor organization"); *id.* § 152(5) (NLRA provision defining "labor organization"). It is undisputed that Plaintiffs fall within this definition of labor organization.

The Supreme Court has explained that the LMRA is "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985); *accord Mason Tenders Dist. Council Welfare Fund v. Kafka Constr., Inc*., 16-cv-9911 (KPF), 2018 WL 2138621, at *4 (S.D.N.Y. May 8, 2018). Under the statute, therefore, courts apply common law principles of contract to agreements like the ones here. *See e.g., Kafka Constr. Inc*., 2018 WL 2138621, *8-15 (awarding employee-benefit funds like Plaintiffs the relief articulated in the contract between the union and the employer, pursuant to the LMRA). As is true in contract law

6

generally, courts applying the LMRA enforce obligations in contracts arising through incorporating other contracts by reference. *See e.g., Goodrich Pump & Engine Control Sys. v. Int'l Union, United Auto. Aero. & Agric. Implement Workers of Am.*, 723 Fed. Appx. 67, 69–70 (2d Cir. 2018); *75-07 Food Corp. v. Trs. of United Food & Commer. Workers Local 342 Health Care Fund*, No. 13-cv-5861 (JFB), 2014 WL 691653, **1–3 (E.D.N.Y. Feb. 24, 2014).

### B. The Contracts Compel Payment

To fully explain Defendant's contractual obligations, the Court must jump through tiers of agreements. As discussed, Defendant signed several project labor agreements. Those project labor agreements, in turn, incorporate by reference collective bargaining agreements, which in turn incorporate the Funds' trust agreements, regulations, and policies. In addition to being bound by the terms of the project labor agreements themselves, therefore, Defendants are *also* bound by these other contracts. In short, assent to a PLA brings with it myriad contractual obligations.

One of Plaintiffs' trust documents is the Collection Policy. It is undisputed here that Defendant was, through its assent to the PLAs, bound by the collective bargaining agreements and the Collection Policy's terms. Pl. 56.1 ¶¶ 4–9, 15–17; Davidian Decl., ¶¶ 7–14, 19–22, 24–28, 30–34, 36–40, 42–52, 59, 71, 76–79. As relevant here, both contracts impose the same obligations on employers like Defendant: The Collection Policy defines a "delinquency" or "delinquent contribution" as, among other things, a "failure to make full contributions or other payments as required on time." Davidian Decl., Ex. Q, § II.3; Ex. R, § II.3. To be timely under the Collection Policy, the employer must remit benefit contributions within "seven (7) calendar days after the end of each pay period." *Id.*, Ex. Q, § II.1, Ex. R, § II.1. If an employer is delinquent, then interest accrues against it at "the prime lending rate if Citibank plus 200 basis

points." Pl. 56.1 ¶¶ 19–20; Davidian Decl., ¶¶ 81, 84, 99–109; *id.*, Ex. Q., § V.1-2; *id.*, Ex. R, § V.1-2.  But the Collection Policy also creates a grace period—if the employer pays its contributions within seven days of the due date, then the Funds refrain from assessing late payment interest.  *Id.*  In short, therefore, the delinquent employer has fourteen days to cure its delinquency and avoid an interest assessment.  *See* Ex. Q, §§ II.1, V.1-2; Ex. R, §§ II.1 and V.1-2.

It is undisputed here that the "Auditor concluded that Defendant owe[d] Plaintiffs $19,679.34, plus attorneys' fees and costs."  Pl. 56.1 ¶ 31.  "This amount represents $9,892.39 in delinquent benefit contributions, $1,668.01 in interest as calculated under the formula set forth in the CBAs and the Collection Policy, $1,978.48 in liquidated damages, $190.46 in amounts owed to the Promotional Fund, and $5,950 in audit costs."  *Id.*  And it is undisputed that Defendant has paid only the principal amount of the delinquency, $9,829.39.  The relevant collective bargaining agreements provide:

> In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s) . . . the following:
>
> (1) the unpaid contributions; plus
> (2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus
> (3) an amount equal to the greater of --
> > (a) the amount of the interest charges on the unpaid contributions as determined in above, or
> > (b) liquidated damages of 20% of the amount of the unpaid contributions; plus
> (4) reasonable attorney's fees and costs of the action; and
> (5) such other legal or equitable relief as the court deems appropriate.

8

Ex. M., Article XV, § 6; Ex. P, Article 12, § 8(f).₃  The Collection Policy further provides that "[a]ll recoverable costs actually incurred in court or other legal actions for the collection of delinquent contributions or to enforce the Funds' right to conduct a payroll review and/or audit of the employer's records as well as the costs expended in conducting any payroll review(s) and/or audit(s) shall be assessed against the delinquent employer, except *de minimis* costs which are administratively impractical to determine on a case by case basis."  Ex. Q, Article V, § 7.

On the undisputed facts, Defendant's delinquency has triggered these obligations.  The Court reviews them in turn.  First, Defendant's delinquent contributions to the relevant fund are $190.46.  Second, the interest on the delinquent contributions identified in the audit is $1,668.01.  Third, the liquidated damages are $1,978.48.  Fourth, the audit costs are $5,950.00.  And the late payment interest on Defendant's benefit contributions, calculated from after the expiration of the grace period, is $12,690.82.  *See* Davidian Decl. ¶¶ 59, 60, 69, 82-83; *Id*., Ex. M., Article XV, § 6, at 42-43, Article XVIII; *Id*., Ex. P, Article XII, § 8(f), Article XV; *Id*., Ex. Q, § V.1-2, 4, 6-7; *Id*., Ex. R, § V.1-2, 4, 6-7; Pahhas Decl., ¶¶ 1-22, Ex. S.  Defendant does not challenge any of these amounts or the calculations used to produce them.  In total, this amounts to $22,477.77.  Under the clear terms of these contracts, Defendant is obligated to pay Plaintiffs this amount.  The contracts also require Defendant to pay Plaintiffs' reasonable attorney's fees and costs associated with this action.

---

₃ Similarly, the Collection Policy also provides that "in the event that a lawsuit, arbitration, or other legal action is filed against the delinquent employer, a delinquency assessment shall be made against such employer." Ex. Q-R, § V.4 ). The "delinquency assessment," in this case, is equal to "[i]n addition to the interest referred to in paragraph 1 of this Section . . .the greater of (a) interest on the delinquent contributions determined in accordance with paragraph 1; or (b) liquidated damages in the amount of twenty percent (20%) of the principal amount of all delinquent contributions." *Id.* The Funds are also entitled to recover their attorney' fees and costs "for all time spent by Collection Counsel in collection efforts or in enforcing the Board of Trustees' rights to payroll reviews and/or audits" and "the costs expended in conducting any payroll review(s) and/or audit(s)." *Id.* § V.6-7.

9

### C. Defendant's Counterarguments All Fail

Defendant asserts various counterarguments to escape liability, but they all fail. To start, Defendant points to the PLAs' so-called "Supremacy Clause," which provides that "[w]here a subject covered by the provision of this Agreement [the PLA] is also covered by [the collective bargaining agreements], provisions of this Agreement shall prevail." *See, e.g.*, Harras Decl., Dkt. No. 60, Ex. L at 4. Defendant correctly interprets this provision as meaning that "if there is a disagreement between the PLA and the CBA and the PLA covers the subject, then the PLA is controlling." Def. Br. at 1. However, Defendant fails to identify a single conflict between these two agreements. The Supremacy Clause is therefore irrelevant to this case.

Defendant next argues that the LMRA is inapplicable here, and this action is instead governed by ERISA. But it provides no legal authority for this contention. To the contrary, Defendant does not dispute that Plaintiffs factually satisfy the statutory requirements to invoke the LMRA. And it is well-established that multi-employer benefit funds like Plaintiffs can seek delinquent contributions from an employer under the LMRA. *See, e.g.*, *Bd. of Trustees of The United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 W.B.P. & A. Funds v. Akro Gen. Contracting, Inc.*, No. 15-cv-04901 (VMS), 2016 WL 6775467, at *6 (E.D.N.Y. Aug. 15, 2016), report and recommendation adopted sub nom. *Bd. of Trustees of the United Union of Roofers v. Akro Gen. Contracting, Inc.*, No. 15-cv-04901 (CBA), 2016 WL 6779487 (E.D.N.Y. Nov. 15, 2016) ("Although ERISA does not allow recovery because the contributions at issue were paid before the suit was initiated, a plaintiff may recover interest on late contributions under a breach-of-contract theory pursuant to the LMRA.").

Defendant lastly argues that Plaintiffs have failed to comply with the grievance and arbitration procedures outlined in the PLAs. But those procedures apply only to signatories to

10

the PLAs. *See* Davidian Decl., Exs. H-L, Article 1. Plaintiffs are not parties to these agreements—they are third-party beneficiaries—and Defendant does not argue otherwise. This argument thus also fails.

### IV.     CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion for summary judgment and DENIES Defendant's cross motion. This resolves Dkt. Nos. 55 and 65. Defendant is ORDERED to pay Plaintiffs $22,477.77. Defendant is also ORDERED to pay Plaintiffs their reasonable attorney's fees and costs. The Court will refer the calculation of reasonable fees to Magistrate Judge Wang by separate order.

The Court also notes that much of Defendant's briefing consists not of legal argument, but of excerpts of emails between Defendant's counsel and Plaintiffs' counsel. The emails, all attached as exhibits, consist of unprofessional attacks against opposing counsel, and Defendant's counsel repeats those attacks in its brief. None of this is relevant to the legal issues presented in this case. In addition, as the Court has noted, Defendant's response to Plaintiff's Rule 56.1 Statement facially did not comply with the Federal Rules of Civil Procedure or this District's Local Rules. Nor did Defendant even submit a Rule 56.1 Statement supporting its cross-motion for summary judgment. The Court admonishes Defendant's counsel for this behavior and advises counsel against such actions in future litigation.

Dated:  April 30, 2020
         New York, New York

_____
ALISON J. NATHAN
United States District Judge